UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**LEIGHTON D. LINDSEY**,
      **Plaintiff**,
  v.                                                                                    Case No. 17-C-333

**STEVE BOST**,
      **Defendant**.
_____

## DECISION AND ORDER

Plaintiff Leighton D. Lindsey, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983. Plaintiff was allowed to proceed on an Eighth Amendment deliberate indifference claim against Steve Bost, Dr. Mary Sauvey, Kathy Lemens, and Cassandra Baier. All the defendants except for Steve Bost filed a motion for summary judgment, and plaintiff agreed that he could not maintain claims against them. Therefore, the only remaining defendant is Steve Bost, who now moves for summary judgment. I will grant Bost's motion and dismiss the case. As for plaintiff's other motions, I will deny his motion to compel and motion for order to view his files and deny as moot his motion for an extension of time.

### I. BACKGROUND[1]

*A. The Parties*

Plaintiff was an inmate at Green Bay Correctional Institution ("GCBI") at all times relevant to this case. Docket No. 52 at ¶ 1. Defendant Steven Bost is currently

---

[1] The facts are taken from "Defendant's Proposed Findings of Fact" (Docket No. 52) and Plaintiff's "Additional Proposed Findings of Fact" (Docket No. 56). Plaintiff did not respond to defendant's proposed findings of fact, so they are deemed undisputed for purposes of summary judgment. Civil L.R. 56(4) (E.D. Wis.). Only facts relevant to deciding this motion and supported by admissible evidence will be included.

employed by corrections as a Nurse Clinician II at GBCI, a position he has held since February 2014. *Id.* at ¶ 2. As a Nurse Clinician II, Bost's duties include, but are not limited to, patient assessment and treatment, assisting the physician in providing medical services, management of medications, provision of emergency care, and maintenance of medical records. *Id.* at ¶ 3.

### B. Plaintiff's Alleged Fall

Plaintiff alleges that, on March 18, 2016, he fell and hit his face on the toilet in his cell. *Id.* at ¶ 5. Bost received a call from Officer John Diedrick in the Restrictive Housing Unit at 5:38 p.m. that day. *Id.* at ¶ 6. Officer Diedrick told Bost that Lindsey had scratched a small area on his forehead and estimated the area was about the size of a quarter. *Id.* at ¶¶ 7-8. Officer Diedrick did not tell Bost how plaintiff had scratched his forehead or that plaintiff claimed to have fallen and hit his head. *Id.* at ¶¶ 9-10. According to plaintiff, he did not tell Officer Diedrick that he scratched his forehead. Docket No. 56 at ¶ 23.Bost advised Officer Diedrick to inform plaintiff to wash the site with soap and water to submit a Health Services Request as needed. Docket No. 50 at ¶ 11.

Bost did not instruct Officer Diedrick to bring plaintiff to the Health Services Unit for treatment because the call was a phone triage that occurred after normal working hours of the Health Services Unit, and Bost determined that it was a non-urgent medical need. *Id.* at ¶ 12. The Health Services Unit has normal working hours of 8:00 a.m. to 4:00 p.m. *Id.* at ¶13. After hours, only urgent medical needs are seen because the night shift is focused on processing physician orders, seeing patients returning from off-site appointments, responding to and treating emergencies, administrative paperwork,

2

ordering medications as needed, and pulling medical charts/medication profile cards for appointments the following day. *Id.* at ¶ 14.

Bost determined that plaintiff's medical condition was non-urgent because of the benign nature of the reported medical complaint; it did not require immediate medical attention. *Id.* at ¶¶ 16-17. Bost did not receive any more phone calls that evening about plaintiff's medical condition. *Id.* at ¶ 18. Bost could have gone to segregation to assess plaintiff. Docket No. 56 at ¶ 27. He believed that plaintiff would file a Health Services Request, as he instructed, if he needed any additional medical care or if his symptoms worsened. Docket No. 50 at ¶ 19.

*C. Pre-Existing Injury to Plaintiff's Cheek*

During a nursing encounter on March 14, 2016, the nurse examined a wound on plaintiff's cheek. *Id.* at ¶ 20. She cleaned the area, applied antibacterial cream, and then gave antibacterial cream to plaintiff for self-application. *Id.* Later, plaintiff submitted another Health Services Request, but this request detailed plaintiff's alleged fall that occurred on the evening of March 18, 2016. *Id.* at ¶ 21. The Health Services Unit received the Request on March 20, 2016, and plaintiff asked to be seen because he claimed his chin was "oozing pus and blood" and that his cheek was bleeding. *Id.* at ¶ 22. In the Request, plaintiff noted that he removed hair from around the cheek wound and that his skin was uneven so he removed flesh to flatten it out. *Id.* at ¶ 23. Plaintiff filed another Health Services Request on March 19, 2016 asking for computer printouts of concussion symptoms, stating he had fallen and hit his face on the toilet and was dizzy. *Id.* at ¶ 24.

3

Nurse Mary Alsteen responded to both of plaintiff's Requests on March 20, 2016. *Id.* at ¶ 25. Plaintiff saw Nurse Kathy Lemens for follow-up care the next day, and she noted that he did not have a fever and that his respirations were normal. *Id.* at ¶¶ 26, 28. She also noted that plaintiff did not show distress in ambulating to the Health Services Unit for the appointment. *Id.* at ¶ 27. During the appointment, plaintiff reported that he fell and hit his head on the toilet and busted open the spot, which was bleeding and had skin hanging (that he then pulled). *Id.* at ¶ 29. Nurse Lemens indicated that there were "no injuries noted from report of fall and hitting toilet—no swelling and no bruising." *Id.* at ¶ 30. She noted that there were no cuts or open areas on his chin, nor were there any signs of infection. *Id.* at ¶ 31. The lesion on plaintiff's cheek was approximately 1.5cm round, very irritated/reddened, but there was no drainage or bleeding. *Id.* at ¶ 32. She diagnosed him with "an alteration in skin integrity and right facial lesion." Docket No. 56 at ¶ 12. Nurse Lemens noted that plaintiff had not been using the antibacterial cream he had been prescribed on March 14, 2016 for the pre-existing cheek lesion. Docket No. 50 at ¶ 33. She supplied him with more antibacterial cream, instructed him to wash the wound daily with soap and water, told him to not pick or squeeze the lesion, to wash his hands, and to notify the Health Services Unit of any signs of infection. *Id.* at ¶ 35. Nurse Lemens did not refer him to see an advanced care physician or provide any further medical care. *Id.* at ¶ 36.

Nurse Cassandra Baier saw plaintiff on March 25, 2016, and plaintiff was frustrated and noted that his cheek was "pretty scabbed up" *Id.* at ¶ 38. He ambulated to the Health Services Unit in no distress and with an even and steady gait. He did not have a fever. Plaintiff complained that his medical needs were not being met. Nurse

4

Baier noted a pea-sized brown scab on his left cheek/jawline, and that there was no redness, swelling, or signs of infection to the area. He was told to keep the area clean and dry and to alert the Health Services Unit of any green drainage or extreme changes in the appearance of the area. *Id.*

Plaintiff did not receive any further medical care for the injuries he alleges he suffered on March 18, 2016, though he continued to be seen regularly by the Health Services Unit for various other issues. *Id.* at ¶ 39.

## II. ANALYSIS

### A. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding defendants' motion, I resolve all factual disputes and make all reasonable factual inferences in favor of plaintiff, who is the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

### B. Plaintiff's Medical Treatment

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a deliberate-indifference claim, a plaintiff must first show that he has "a medical condition 'that has been

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Edwards v. Snyder*, 478 F.3d 827, 830–31(7th Cir. 2007) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). He must then show "that the prison official[s] knew of 'a substantial risk of harm to [him] and disregarded the risk.'" *Id.* at 831 (first quoting *Greeno*, 414 F.3d at 653; and then citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Medical malpractice or a disagreement as to the proper course of medical treatment is not deliberate indifference. *Id.* (first citing *Estelle*, 429 U.S. at 107; then citing *Greeno*, 414 F.3d at 653; and then citing *Estate of Cody by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). In order to survive summary judgment, the evidence must be such that a reasonable jury "could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Id.* (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Here, the admissible evidence establishes that the only information Bost had when he decided to not assess plaintiff on March 18, 2016, was that plaintiff had a quarter-sized scratch on his forehead. On this evidence, plaintiff cannot establish that he had a serious medical need and, even if he could, he cannot establish that Bost disregarded a risk to his health and safety.

Things like "scratch[es]" and "scraped elbows, swollen cheeks, split lips, and lacerations not requiring stitches [are] insignificant as a matter of due process." *Williams v. Stauche*, 709 Fed. Appx. 830, 834 (7th Cir. 2017) (internal citations omitted). The injury conveyed to Bost was a scratch about a quarter in size, and falls well within injuries that are not constitutionally significant. Even assuming that the 1.5 centimeter

lesion on plaintiff's cheek was not preexisting (as it seems that it was) and it was on what Bost based his decision, plaintiff could still not establish a serious medical condition. All the treatment required was cleaning it and applying antibacterial cream.

However, for the sake of completeness, I note that Bost would be entitled to summary judgment even if what plaintiff experienced was a serious medical need. The established facts are that Bost based his decision on being told plaintiff had a quarter-sized scratch on his forehead, which is not a serious medical condition. Plaintiff has not established any facts to the contrary, though he argues a different version of events. Even if something worse did happen, Bost did not know about it. And if Bost did not know, he cannot be liable for not seeing plaintiff for treatment. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006 ("It is not enough to show, for instance, that a doctor should have known that surgery was necessary; rather, the doctor must know that surgery was necessary and then consciously disregard that need in order to be held deliberately indifferent.").

In sum, plaintiff has failed to demonstrate that he suffered a serious medical need. Even if he had, though, he has not shown that Bost based his decision on a serious medical condition. Instead, the evidence establishes that Bost based his decision on being told that plaintiff had a small scratch on his forehead. Therefore, Bost is entitled to summary judgment, and I will grant the motion.

*C. Plaintiff's Other Motions*

Plaintiff has also filed a few other motions. First, plaintiff's motion for an extension of time is denied as moot. He has filed all materials required of him. Plaintiff also filed two (more) discovery-related motions. He filed these motions in three cases:

7

this one, 17-C-329, and 17-C-330. I already decided both motions in my decision in 17-C-329. For the sake of completeness, though, I will include my reasoning here, too. The first is a motion to compel, in which he requests that the defendants be ordered to produce the defendants' personnel files. The defendants are correct that plaintiff failed to comply with Civil Local Rule 37, and Federal Rule of Civil Procedure 37, and confer with defendants prior to moving to compel. I could deny the motion on that ground alone, but because plaintiff is *pro se*, I will also assess the motion on the merits. What plaintiff is asking for is access to secure information that he says he needs because there "may be relevant information that shows a custom or pattern." Docket No. 51 at 1. However, plaintiff is not bringing a *Monell*[2] claim against a government entity. Therefore, I will deny his motion to compel.

Finally, plaintiff filed a motion asking for me to issue an order that will allow him to view his security, medical, and legal files. He has raised this issue multiple times, and again, I will deny his motion. The defendants have provided sworn declarations showing the times he has been allowed to access his medical file and other files and had failed to request access to his security file. He was not denied the opportunity to review his files, so his motion is denied.

## ORDER

**THEREFORE, IT IS ORDERED** defendants' motion for summary judgment (Docket No. 50) is **GRANTED**. Judgment will be entered accordingly.

**IT IS ALSO ORDERED** that plaintiff's motion for extension of time (Docket No. 30) IS **DENIED AS MOOT**.

---

[2] *Monell v. Dep't of Soc. Svc's of the City of New York*, 436 U.S. 658 (1978).

**IT IS FURTHER ORDERED** that plaintiff's motion to compel (Docket No. 32) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for an order to review his files (Docket No. 29) is **DENIED**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 8th day of August, 2018.

                                                      s/Lynn Adelman_____
                                                      LYNN ADELMAN
                                                      United States District Judge